# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

SONNY WHITTED,                  :

    Plaintiff,               :

vs.                             :   CIVIL ACTION 06-000776-KD-B

RICHARD ROBERTS,                :

    Defendant.               :


## REPORT AND RECOMMENDATION

Plaintiff Sonny Whitted is an Alabama prison inmate, who is proceeding <u>pro</u> <u>se</u> and <u>in</u> <u>forma</u> <u>pauperis</u>. He filed the instant action alleging violations of 42 U.S.C. § 1983.[1] This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendant Richard Roberts' Motion for Summary Judgment (Docs. 25, 26) and Plaintiff's opposition thereto (Doc. 31). After careful consideration of these pleadings, and for the reasons set out below, it is recommended that Defendant's Motion for Summary Judgment be granted and that Plaintiff's action against this Defendant be dismissed with prejudice.

---

[1]Whitted initiated his action on November 14, 2006 by filing a Complaint (Doc. 1); however, because Whitted used an outdated complaint form, this Court, on November 27, 2006, ordered Whitted to file his complaint on an updated form. (Doc. 3). Whitted subsequently filed his new Complaint on the proper form on December 15, 2006. (Doc. 4). Pursuant to the Court's Order dated November 27, 2006, Whitted's instant Complaint supersedes his original Complaint.

## I.  <u>SUMMARY OF ALLEGATIONS</u>

From its review of the record, the Court summarizes below the parties' allegations which are material to the issues addressed in this Report and Recommendation.

The record reflects that on September 13, 2006, Whitted had outpatient surgery on his right shoulder due to "[s]ubacromial impingement" and "AC arthrosis."[2] (Doc. 25, Ex. B, p. 1). The medical records show that a "[r]ight shoulder distal clavicle excision and acromioplasty" were performed and that Whitted was provided an arm sling and instructed in pendulum exercises post surgery. (<u>Id.</u>)  According to Whitted, on September 18, 2006, at approximately 4:30 p.m., while incarcerated at Holman Correctional Facility ("Holman"), he sat in the prison hospital ward when fellow inmate and infirmary patient James Click[3] suddenly began to yell that Whitted was masturbating in the presence of the women in the health care unit.[4] (Docs. 4, 31); <u>see also</u> (Doc. 26, Ex. E, Raines

---

[2]The record indicates that Whitted also suffers from "glenohumeral arthrosis," commonly referred to by physicians as "shoulder arthritis." <u>See</u> "AC Arthritis," http://orthopedics. about.com/cs/generalshoulder/a/acarthritis.htm (last visited Sept. 15, 2009).

[3]Whitted incorrectly identifies Inmate Click as "Jamie Flick." (Docs. 1, 31).

[4]The Incident Report reflects that Inmate Click yelled, "Get me out of here now, I ain't staying in here with this damn man playing with himself.  This man is in here (Health Care Ward) looking at those women playing with himself." In response, Plaintiff Whitted stated, "[W]ho are you saying playing with themself? I ain't playing with myself bitch." Click continued to

Aff.). According to Whitted, Inmate Click is mentally ill and should have been placed in an isolated cell and not in a cell with him. (Doc. 31, pp. 11-12, 15, 20). Further, Whitted alleges that Click attempted to remove his IV in order to use it as a weapon, although he does not indicate against whom Click intended to use the IV. (Id.) In response to Click's complaints, Officer Salter, who was assigned to the hospital ward, radioed Lt. Joseph Raines for assistance. (Doc. 25, Ex. A).

Shortly thereafter, Defendant Richard Roberts and Lt. James English entered the infirmary. According to Whitted, without any warning, as he sat on his bed, Roberts approached him and grabbed his right wrist. Whitted alleges Roberts began to twist Plaintiff's wrist behind his back in order to handcuff him, or otherwise restrain him. (Doc. 4, pp. 4-5; Doc. 31, p. 2). Roberts could not force Whitted's arm behind his back because, according to Whitted, he had a "pillow like devise [sic] strapped to both shoulders." (Doc. 4, p. 4). At that time, Whitted contends that he "was in so much pain and could feel the staples pulling [his] skin. [He] plead[ed] with Roberts to stop because Whitted had a front profile order from the doctor to be cuffed to the front." (Doc. 31, pp. 2-3). Immediately thereafter, Lt. Raines entered the hospital unit and directed Roberts and English to stop attempting to

_____

yell and insisted Officer Salter remove him from the ward. (Doc. 25, Ex. A, Incident Report).

handcuff Whitted behind his back and to handcuff him to the front. (Doc. 31, p. 3). Then, Whitted alleges, Defendant Roberts stated, "I should've broken your arm," and again grabbed Whitted's right wrist. Lt. Raines again ordered Roberts to stop, and Roberts and Lt. English escorted Whitted to his cell. (Doc. 31, p. 3). Whitted contends that as a result of Roberts' actions, his shoulder was reinjured. He further alleges that after complaining that he had been reinjuried, he was not timely permitted to see a doctor. (Doc. 4).

In contrast, Defendants have submitted the sworn affidavit of Defendant Roberts, as well as the sworn affidavits of Lt. English and Lt. Raines[5]. See (Doc. 25, Exs. C-E). According to the affidavits, both Defendant Roberts and Lt. English entered the health care unit because two inmates, namely Whitted and Click, were involved in a verbal altercation. (Doc. 25, Roberts Aff; English Aff.). Defendant asserts that he ordered Inmate Click to leave the health care unit, which Click did. Defendant further testifies that Whitted was ordered to sit down on his bed, an assertion supported by the affidavit of Lt. English; however, Whitted refused to comply with the direct order. As a result, Defendant asserts that he grabbed Whitted's left wrist, while English avers that he grabbed Whitted's right wrist, the same side

---

[5]  Neither English nor Raines is a party to this lawsuit.

upon which surgery had recently been performed.[6] (Doc. 25, Ex. C, Roberts Aff.; Ex. D, English Aff.). Lt. Raines entered and ordered English and Roberts not to handcuff Whitted behind his back but to the front due to Whitted's complaints about his shoulder. (Doc. 25, Raines Aff.; English Aff.).[7] Whitted was then escorted back to his cell. (Doc. 25, Raines Aff.; Roberts Aff.; English Aff.). Defendant submits that contrary to Whitted's allegations, he could not have injured Whitted's right shoulder because he took hold of Whitted's left arm, which is not the arm upon which surgery had been performed. (Doc. 25, Roberts Aff.). Defendant further maintains that he used no more force than necessary. Roberts asserts that because Whitted refused to obey a direct order, he took hold of Whitted's left wrist only to maintain security and restore order, not maliciously to cause harm.

For the purpose of this Report and Recommendation, the Court will assume, as Plaintiff alleges, that Officer Roberts grabbed Whitted's right wrist.

---

[6]Lt. English testified that he and Defendant grabbed Whitted's wrists to keep him from fighting with the other inmate, Inmate Click. (Doc. 25, English Aff.).

[7]In his affidavit, Defendant states that Lt. Raines ordered him and Lt. English to release Whitted, at which point the two officers "backed off." He asserts that he cannot recall who directed him to handcuff Whitted to the front. (Doc. 25, Roberts Aff.).

## II. **PROCEDURAL ASPECTS OF THE CASE**

On November 14, 2006[8], Whitted filed the present § 1983 action alleging that Defendant, former Correctional Officer Richard Roberts[9], violated his Eighth and Fourteenth Amendment rights by using excessive force against him in response to a verbal altercation between Plaintiff and another inmate. (Doc. 4, pp. 4-5). Specifically, Whitted alleges that Roberts intentionally caused him pain and suffering by twisting his arm behind his back knowing that Whitted had just had surgery performed on the same arm and that he was to be handcuffed to the front. (Id. at 5). Whitted further suggests that he was initially denied medical treatment for his allegedly reinjured shoulder. (Id. at 4; Doc. 31). For relief, Whitted seeks compensatory and punitive damages. (Doc. 4 at 7).

In his Answer and Special Report filed on March 23, 2009 (Doc. 25), Roberts denies Whitted's allegations. Defendant asserts the defenses of absolute, qualified, and sovereign immunity. (Doc. 25). On April 7, 2009, the Court entered an Order converting Defendant's Special Report and Answer to a Motion for Summary

---

[8]    As previously noted, Whitted originally filed this action on November 14, 2006, while incarcerated at Holman Correctional Facility, but was ordered by this Court to file his Complaint utilizing this Court's updated form. (Docs. 1, 3). Whitted filed his amended complaint on December 15, 2006. (Doc. 4). On May 14, 2007, Whitted filed a notice of change of address, which indicated that he is presently being held at St. Clair Correctional Facility. (Doc. 9).

[9]Defendant is no longer employed at the Holman facility. See (Docs. 20, 22).

Judgment.  (Docs. 25, 26).  On July 9, 2009, Whitted filed a response in opposition to Defendant's Motion for Summary Judgment. (Doc. 31).  In his response, Whitted reiterates his claim that Defendant used excessive force and directly disputes Defendant's contention that he disobeyed a direct order (<u>Id.</u>)  Defendant's motion and Whitted's response thereto are now before the Court.

### III.  <u>SUMMARY JUDGMENT STANDARD</u>

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The <u>Federal Rules of Civil Procedure</u> grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'"  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting <u>Fed. R. Civ. P.</u> 56(c)).

The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party.  <u>Barfield v. Brierton</u>, 883 F.2d 923, 934 (11th Cir. 1989).

However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing

> that there is a genuine issue for trial. If
> the adverse party does not so respond, summary
> judgment, if appropriate, shall be entered
> against the adverse party.

Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 325-27.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

## IV. **DISCUSSION**

As noted above, Whitted seeks redress pursuant to 42 U.S.C. § 1983 for an alleged constitutional deprivation arising out of a physical confrontation between himself and former Correctional Officer Richard Roberts that took place on September 18, 2006, in the hospital ward of Holman Correctional Facility. (Doc. 4). Whitted, who was recuperating from shoulder surgery, alleges that Defendant Roberts used excessive force when he allegedly grabbed Whitted's right wrist in an attempt to handcuff Whitted behind his

back.[10] Whitted further suggests that Defendant denied him medical care after the incident. (Docs. 4, 31). Defendant Roberts denies that he used excessive force against Whitted and further asserts the defenses of absolute, qualified, and sovereign immunity.[11] (Doc. 25).

Section 1983 provides in pertinent part that:

> Every person who, under color of any statute,

---

[10]Notably, in his Complaint, Whitted maintains that the initial injury to his right shoulder, which allegedly occurred at Donaldson Correctional Facility on January 15, 2002, was caused by an altercation with another correctional officer, Ricky Wright. (Doc. 4, p. 3); see also (Doc. 31).

[11]In his Complaint, Whitted does not specify whether he is suing Defendant in his official or individual capacities or both. Thus, the Court will consider both. As a state officer, Defendant is entitled to absolute immunity from suit for damages in his official capacity. See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).

In addition, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). Qualified immunity is not available with respect to a claim of excessive force. See Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002). Therefore, the only claim to which qualified immunity could apply is Plaintiff's claim for failure to provide medical treatment. Having found herein that Plaintiff's allegations related to the denial of medical treatment in this case do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier v. Katz, 533 U.S. 194, 201 (2001), abrogated in part by Pearson v. Callahan, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009) (holding district courts have discretion as to the order in which to address the two prongs of the qualified immunity analysis).

> ordinance, regulation, custom, or usage, of
> any State or Territory or the District of
> Columbia, subjects, or causes to be subjected,
> any citizen of the United States or other
> person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or
> immunities secured by the Constitution and
> laws, shall be liable to the party injured in
> an action at law, suit in equity, or other
> proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

   A.   Whitted's Eighth Amendment Excessive Force Claim.

   In addressing Whitted's claims brought under § 1983, the Court
begins its analysis "by identifying the specific constitutional
right allegedly infringed by the challenged application of force."
Graham v. Connor, 490 U.S. 386, 394 (1989).  Although Whitted has
raised these claims under the Eighth and Fourteenth Amendments, it
is the Eighth Amendment that applies here.  The Eighth Amendment,
which attaches "after conviction and sentence," protects
incarcerated prisoners, like Whitted, from punishment that is
"cruel and unusual."   Graham, 490 U.S. at 392 n.6, 394.
Specifically, the Eighth Amendment "prohibits the unnecessary and
wanton infliction of pain, . . . the infliction of pain totally
without penological justification. . . , [and] the infliction of
punishment grossly disproportionate to the severity of the
offense." Ort v. White, 813 F.2d 318, 321 (11th Cir. 1987) (citing
Rhodes v. Chapman, 452 U.S. 337, 346 (1981)).

   In order to establish an Eighth Amendment claim against
Defendant Roberts, Whitted must prove both an objective and

subjective component. That is, Whitted must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation and that Defendant "act[ed] with a sufficiently culpable state of mind," *i.e.*, that he acted "maliciously and sadistically to cause harm." <u>Hudson v. McMillian</u>, 503 U.S. 1, 7-8 (1992).

In <u>Hudson</u>, the Supreme Court recognized that, whenever guards use force to keep order, they "must balance the need 'to maintain or restore discipline' through force against the risk of injury to inmates." <u>Hudson</u>, 503 U.S. at 6 (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 321-22 (1986)). Thus, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Id.</u> at 7. In making this determination, the Court considers the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived, any efforts made to temper the severity of a forceful response, and the extent of injury suffered. <u>Hudson</u>, 503 U.S. at 7 (citing <u>Whitley</u>, 475 U.S. at 321).

Considering the evidence in the light most favorable to Whitted, the question is whether a jury could reasonably conclude that Defendant Roberts violated Whitted's rights under the Eighth Amendment. Under the circumstances of this case, Whitted's allegations fail to establish a constitutional violation.

It is undisputed that on the day in question, September 18, 2006, a confrontation of some sort occurred in the prison hospital ward when Inmate Click suddenly began to yell to the officer on duty, Officer Salter, that Whitted was masturbating in front of the nurse, an accusation Whitted contends he verbally denied.[12] (Doc. 31, p. 2). According to Whitted, Click cursed and attempted to remove his I.V. (Id.) After Salter radioed for assistance, Whitted alleges that "Officer Raines, English and Roberts entered the infirmary with there batons drawn. Whitted was setting on his bed and observed Robert's places his baton on his side and than without warning or an order Roberts came in and went straight for Whitted's Right Shoulder, by grabbing Whitted's right wrist and trying to force Whitted's arm behind Whitted's back. Though, Whitted had on a arm sling and/or air bag to protect his arm after surgery." [sic] (Doc. 31 at 2). At that point, Whitted asserts that Roberts used such force that his shoulder began to bleed and that the staples in his shoulder, due to his surgery, were loosened. (Doc. 4 at 4). Further, Whitted contends that as a result of Roberts' use of force, his shoulder was reinjured, and he later required additional surgery on his right shoulder. (Doc. 31 at 3). According to Whitted, Defendant Roberts' use of force was not in response to

_____

[12]Specifically, Whitted avers that he "told Click that he was a lie and as Whitted tried to rise himself from this bed, Click begin to try an remove his I.V. that was placed in his arm as a weapon." [sic] (Doc. 31, p. 2).

Whitted's refusal to obey a direct order or to a reasonably perceived threat but, rather, was malicious and unjustified. (Doc. 31 at 4-5). In support of his allegation, Whitted maintains that Defendant told him that "[he] should have broken [Whitted's] arm." (Id.) The Court, however, is not convinced.

In assessing the factors enumerated above, specifically, the threat reasonably perceived by Defendant, the need for the use of force, and Defendant's motive in using force, it is evident that the disruptive behavior of Whitted and his cell mate, James Click, created a chaotic and potentially uncontrollable situation which undermined prison discipline and the authority and control of the jailers. Indeed, Plaintiff admits that Click shouted and ranted and attempted to use his IV as a weapon. He further admits that Click yelled that Whitted was engaged in inappropriate conduct in front of the nurse. Whitted, in turn, responded and told Click his allegations were untrue.

While Defendant maintains that he not was the officer who grabbed Whitted's right wrist, Whitted avers Roberts grabbed his right wrist and attempted to pull it behind his back. Accepting Whitted's contentions as true, under the circumstances, the commotion created by Whitted and inmate Click was reasonably perceived as hostile to the medical staff and to the officers present, and the defendant may have deemed that the use of some force was necessary to restore discipline and control. As an

initial step to restore order, Defendant ordered inmate Click to leave the area.  Next, considering that Plaintiff was alleged to be engaged in lewd conduct and to have refused a direct order to sit down, the need for the application of force to subdue Whitted, in order to remove him from the hospital unit, was present and significant.

In this case, other than Whitted's own self-serving allegation that Defendant threatened that he should have broken his arm, there is no indication that Defendant Roberts' motive in restraining Plaintiff was anything other than a good faith effort to gain control of an inmate who was acting inappropriately and to prevent the further deterioration of security in the hospital ward.

With respect to the amount of force used by Defendant, the Court is mindful that, while an inmate must be protected from the "'unnecessary and wanton infliction of pain' by prison officials," prison officials must maintain order and discipline "in an often dangerous and unruly environment." <u>Ort</u>, 813 F.2d at 321-22.  Thus, prison officials must be extended deference "in acting to insure the proper administration, safety and security of a penal institution." <u>Id.</u> at 322.  "'The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict

sense.'" Id. at 323 (citations omitted).

In this case, Whitted has failed to show that his need to be handcuffed to the front had been previously conveyed to Defendant. Further, Roberts and his fellow officer attempted to restrain Whitted, an inmate who was alleged to have been masturbating in the prison infirmary in front of the nurses. Officer Roberts maintains that Whitted was ordered to sit down on his bed, and Whitted refused to do so. (Roberts Aff.); see also (English Aff.). Whitted denies that he refused to obey an order; however, he admits he attempted to get out of bed in response to Click's behavior. (Doc. 31, p. 2). Accepting Whitted's assertions as true, Defendant Roberts subdued him by pulling his right wrist behind his back in an apparent attempt to handcuff him, and Defendant Roberts caused his injured shoulder to bleed and the staples to become loosened and resulted in a new injury. However, inherent in the protection afforded by the Eighth Amendment is the principle that "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" Clark v. Johnson, 2000 WL 1568337, *12 (S.D. Ala. 2000) (unpublished) (quoting Hudson, 503 U.S. at 9-10). Indeed, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" Hudson, 503 U.S. at 9 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973)).

It is undisputed that Whitted had recently undergone surgery

on his right shoulder, and as a result, he very likely could have experienced discomfort with any movement of his arm. However, Whitted admits, in his own words: "The only reason [Roberts] doesen't [sic] do excessive damages to my shoulder is I've got that device on ...." (Doc. 31, p. 20). In other words, Whitted submits that severe injury to his shoulder was somewhat abated by the medical device he was wearing as the result of his pre-existing shoulder surgery. Moreover, it is undisputed that Lt. Raines entered the infirmary shortly after Defendant and directed that Whitted be handcuffed to the front, preventing any further discomfort.[13]

Although Defendant's attempt to handcuff Whitted's right arm behind his back may have caused great discomfort, considering all

---

[13]In addition, according to Plaintiff, Roberts' actions caused him to require a partial shoulder replacement. However, Plaintiff provides no evidence that he had further surgery on his shoulder. Even if he had, he would be hard pressed to link this later surgery to the incident involving Defendant Roberts. In fact, Whitted has completely failed to show any documented damage at all at the hands of Defendant Roberts; therefore, Whitted's contention that a later shoulder replacement was due to any injury he received on September 18, 2006, is speculation at best.

A review of Whitted's medical records shows that during his post surgery follow-up with orthopedic surgeon, Dr. Raymond Fletcher, on October 6, 2006, Whitted "report[ed] good relief of right shoulder pain following decompression. He reports altercation with guard on 9-18-06 with twisting injury of the right shoulder with popping sensation. Right shoulder reveals no swelling with minimal tenderness. X-ray right shoulder shows surgical decompression." (Doc. 25, Ex. B, p. 2). Further, Whitted's medical records are replete with complaints of body aches and pain due to arthritis, which is also found in his shoulder. See (Doc. 25, Ex. B, pp. 1, 7-12, 17-18, 20-22).

of the facts enumerated above, Whitted's allegations simply do not

support his claim of excessive force. The defendant's conduct, as

alleged by Whitted, can hardly be said to be repugnant to the

conscience of mankind. Therefore, since no constitutional

violation has been established, Defendant's Motion for Summary

Judgment as to this claim is due to be granted. <u>See</u> <u>Bennett v.</u>

<u>Parker</u>, 898 F.2d 1530, 1534 (11th Cir. 1990) ("No material issues

can be in dispute where the plaintiff's evidence fails to establish

a constitutional violation.").

    B.   <u>Whitted's Claim of Denial of Medical Care</u>.[14]

    Next, Whitted claims that Defendant violated his rights under

---

[14]Defendant has failed to address Whitted's second claim,
that he was timely denied medical care, in his Motion for Summary
Judgment. (Docs. 25, 26). Thus, the Court addresses this second
claim <u>sua</u> <u>sponte</u>. <u>See</u> <u>Hosea v. Langley</u>, 2006 WL 314454, *33
(S.D. Ala. Feb. 8, 2006) ("[A] district court may award summary
judgment <u>sua</u> <u>sponte</u> so long as the party adversely affected has
received adequate notice to submit evidence and arguments on the
issue in question."); <u>Artistic Entertainment, Inc. v. City of</u>
<u>Warner Robins</u>, 331 F.3d 1196, 1201 n. 10 (11th Cir.2003) ("Where
it appears clearly upon the record that all of the evidentiary
materials that a party might submit in response to a motion for
summary judgment are before the court, a <u>sua</u> <u>sponte</u> grant of
summary judgment against that party may be appropriate if those
materials show no material dispute of fact exists...."). Thus,
entry of summary judgment on the Court's own motion is
appropriate if (1) the legal issue has been fully developed, and
(2) the evidentiary record is complete. <u>See</u> <u>Artistic</u>, 331 F.3d at
1202. The undersigned is satisfied that the evidentiary record is
complete, and that Whitted has had a full opportunity to present
all of his evidence and legal arguments in support of his denial
of medical care claim.

the Eighth Amendment by failing to provide proper medical treatment to him after Defendant unsuccessfully attempted to restrain him behind his back following his shoulder surgery. (Docs. 4; 31). According to Whitted, after he was removed from the prison infirmary on September 18, 2006, he requested to see a "medical person" due to an alleged reinjury to his shoulder, but no medical care was provided. (Id.) Specifically, Whitted asserts that he was bleeding from the medical staples in his shoulder, and that while he repeatedly requested medical attention, a "body chart" was not performed until September 19, 2006.[15] (Docs. 4, 31).

"The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). In order to demonstrate a denial of medical care in violation of the Eighth Amendment, Whitted must prove both an objective and subjective component. To meet the objective element, Whitted first must demonstrate the existence of an "objectively serious medical need." Farrow v. West, 320 F.3d

---

[15]While Whitted's Complaint lists the date he received a "body chart" as October 19, 2006 (Doc. 4), the Court assumes he intended to allege that a body chart was performed on September 19, 2006. Specifically, the medical records indicate, and Whitted acknowledges in documents submitted to the Court, that a body chart was performed on September 19, 2006. See (Docs. 25, Ex. B, p. 19; 31, pp. 13, 20). Further, the record is devoid of any evidence that Whitted was treated on October 19, 2006.

1235, 1243 (11th Cir. 2003).  A serious medical need is "'one that
has been diagnosed by a physician as mandating treatment or one
that is so obvious that even a lay person would easily recognize
the necessity for a doctor's attention.'"  Id. (quoting Hill v.
Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).
"In either of these situations, the medical need must be one that,
if left unattended, pos[es] a substantial risk of serious harm."
Id. (internal quotation marks and citation omitted).

In order to meet the subjective requirement of an Eighth
Amendment denial of medical care claim, Whitted must further
demonstrate "deliberate indifference" to a serious medical need.
Farrow, 320 F.3d at 1243.

> In Estelle, the Supreme Court established that
> "deliberate indifference" entails more than
> mere negligence. Estelle, 429 U.S. at 106, 97
> S. Ct. 285; Farmer, 511 U.S. at 835, 114 S.
> Ct. 1970.  The Supreme Court clarified the
> "deliberate indifference" standard in Farmer
> by holding that a prison official cannot be
> found deliberately indifferent under the
> Eighth Amendment "unless the official *knows of*
> and *disregards an excessive risk to inmate*
> *health or safety*; the official must both be
> aware of facts from which the inference could
> be drawn that a substantial risk of serious
> harm exists, and he must also draw the
> inference." Farmer, 511 U.S. at 837, 114 S.
> Ct. 1970 (emphasis added).  In interpreting
> Farmer and Estelle, this Court explained in
> McElligott that "deliberate indifference has
> three components: (1) subjective knowledge of
> a risk of serious harm; (2) disregard of that
> risk; (3) by conduct that is more than mere
> negligence." McElligott, 182 F.3d at 1255;
> Taylor, 221 F.3d at 1258 (stating that

> defendant must have subjective awareness of an
> "objectively serious need" and that his
> response must constitute "an objectively
> insufficient response to that need").

Farrow, 320 F.3d at 1245-46 (emphasis in original).

In addition, where a plaintiff complains of delay in medical treatment, he has the burden of establishing that he suffered a significant effect from the delay.  See Hill, 40 F.3d at 1188.  "An inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed."  Id. (emphasis added).

Although Whitted has provided no evidence demonstrating that he suffered any significant effect from the alleged delay in medical treatment, the Court assumes, for purposes of this motion, that Whitted has demonstrated an "objectively serious medical need" in order to satisfy the first component of his Eighth Amendment claim.  Therefore, the Court turns to the second, subjective element of Whitted's claim, that is, whether Defendant was deliberately indifferent to Whitted's serious medical need.

A review of Whitted's medical records shows that he presented to the prison health care unit in "satisfactory" condition on September 19, 2006, the day after the altercation with Defendant,

after complaining that his shoulder was reinjured and hurting.[16] (Doc. 25, Ex. B, p. 19). After physical examination, the treating nurse noted Whitted had a 100.3 degree fever and that he was prescribed Tylenol. The examining nurse further documented that "Rt shoulder has edema around incision, tender when touched, small amt of drainage noted, no other bruises or abrasions noted." (Id.) The record reveals that during this visit, a "body chart" was performed. See (Docs. 25, Ex. B, p. 19; 31, pp. 13, 20). Whitted was subsequently seen by a nurse on September 23, 2006, September 28, 2006, and October 24, 2006, with complaints of shoulder pain, pain in his feet and thighs, rheumatoid arthritis, and all-over body aches, which have lasted for "years." (Doc. 25, Ex. B, pp. 10; 12; 18).

In addition, medical records from Foley Orthopedics indicate that Whitted was evaluated by Dr. Raymond Fletcher on October 6, 2006, 3 weeks and 2 days following his surgery. (Doc. 25, Ex. B, p. 2). At that time, Whitted reported an altercation with a prison guard "with a twisting injury of the right shoulder with popping

---

[16]The record reflects that Whitted submitted Sick Call Requests on numerous dates, including September 20, 2006; September 21, 2006; September 22, 2006; September 23, 2006; September 25, 2006; October 23, 2006; October 29, 2006; November 2, 2006; November 3, 2006; November 24, 2006; May 14, 2007; May 17, 2007; and May 21, 2007, complaining of various pains and body aches. (Docs. 25, Ex. B; 31). He also submits copies of a number of grievances he filed related to the incident with Defendant Roberts, which also include complaints that Defendant was attempting to poison his food and that his bandages were not timely changed. See (Doc. 31).

sensation." (<u>Id.</u>) Dr. Fletcher noted, however, that the "[r]ight shoulder reveals no swelling with minimal tenderness. X-ray right shoulder shows surgical decompression." (<u>Id.</u>) Whitted was directed to "[d]ecrease use of arm sling. Continue pendulum exercises. Start active overhead ROM exercise. [And] [r]eturn in 12 weeks." (<u>Id.</u>)

In this action, Whitted claims that his constitutional rights were violated when he repeatedly requested to be seen by a doctor, but according to him, he was not given a "body chart" until September 19, 2006, nor were his bandages timely changed on at least one occasion. (Docs. 4, 31). Although Whitted does not actually allege that Defendant was "deliberately indifferent" to his serious medical needs, this Court, construing Whitted's vaguely pled Complaint liberally, will assume that the gist of Whitted's allegation is that Defendant was "deliberately indifferent" to his medical needs. Whitted's claim is not borne out by the record.

In order to constitute "deliberate indifference," Defendant must have known of and disregarded an excessive risk to Whitted's health. <u>Farrow</u>, 320 F.3d at 1245. It is clear that at the time of the incident, Whitted was already receiving medical attention due to his shoulder surgery on September 13, 2006. The brief allegations of his Complaint and Response filed in opposition to Defendant's Motion for Summary Judgment appear to focus on the pain and suffering that Whitted contends he endured following his

confrontation with Defendant Roberts in the hospital ward on September 18, 2006. As best the Court can discern, Whitted complains that he did not receive the "body chart" he believed he required until the very next day, September 19, 2006, and that his dressings were not changed until September 20, 2006. The undisputed evidence however demonstrates that the day following the incident, Whitted was examined by a nurse, and his condition was rated "satisfactory." Whitted does not dispute the accuracy of the records submitted by Defendant, nor does he deny that he was treated by a prison nurse on multiple occasions. Furthermore, he was evaluated by an orthopedic surgeon on October 6, 2006. (Doc. 25, Ex. B, p. 2).

Whitted has not proffered any probative evidence which suggests deliberate indifference on the part of Defendant or that the medical care he received was inadequate. First, there is no evidence that Roberts was responsible for Whitted's medical care. Moreover, Whitted has not submitted any "verifying medical evidence" showing that the less than 24-hour delay in medical treatment resulted in the diminution of his physical or mental health. Hill, 40 F.3d at 1188. The absence of such evidence further undermines a finding that Defendant was deliberately indifferent to Whitted's serious medical needs.

While "[d]elay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and

wanton infliction of pain," Hill, 40 F.3d at 1187, the record in this case simply does not show such. The record reflects that Whitted was given medical care on the day following the incident with Defendant Roberts, September 19, 2006, on September 23, 2006, on September 28, 2006, and then again on October 6, 2006, at the office of Dr. Raymond Fletcher.

> "When a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989). "[D]elay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay." Hill, 40 F.3d at 1189.

Id.

Considering all of the circumstances surrounding the treatment that Whitted received for his many medical problems, along with Whitted's vague and conclusory allegations, the undersigned finds that Whitted has not presented facts which suggest that Defendant was deliberately indifferent to Whitted's medical needs following his forced removal from the prison infirmary by Defendant and other officers on September 18, 2006. To the contrary, the evidence reflects that prison staff, with the aid of a private physician, responded to the many medical needs presented by Whitted. Thus, Whitted has failed to establish the subjective element of his denial of medical care claim. Because Whitted has failed to establish both the objective and subjective elements of his Eighth

Amendment medical care claim, the Court has determined <u>sua</u> <u>sponte</u> that the evidence demonstrates that there is no genuine issue of material fact and that Defendant is entitled to judgment as a matter of law on this claim as well.


## V. <u>CONCLUSION</u>

For the reasons set forth above, the undersigned concludes that Defendant Richard Roberts is entitled to summary judgment in his favor on all claims asserted against him by Whitted. Accordingly, it is recommended that Defendant's motion for summary judgment be **GRANTED**, that this action be **DISMISSED** with prejudice, and that judgment be entered in favor of Defendant and against Plaintiff Sonny Whitted on all claims.

The attached sheet contains important information regarding objections to this recommendation.

DONE this **17th** day of **February, 2010**.


　　　　　<u>　　/s/ SONJA F. BIVINS　　</u>
　　　　　**UNITED STATES MAGISTRATE JUDGE**

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS

AND RESPONSIBILITIES FOLLOWING RECOMMENDATION

<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>


1.   <u>Objection</u>.  Any party who objects to this recommendation or anything in it must, within **fourteen** days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988); <u>Nettles v. Wainwright</u>, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:


    A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[17] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.


    A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

---

[17]The Court's Local rules are being amended to reflect the new computations of time as set out in the amendments to the Federal Rules of Practice and Procedure, effective December 1, 2009.

2.   <u>Transcript (applicable where proceedings tape recorded)</u>.
Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the
magistrate judge finds that the tapes and original records in this
action are adequate for purposes of review.  Any party planning to
object to this recommendation, but unable to pay the fee for a
transcript, is advised that a judicial determination that
transcription is necessary is required before the United States
will pay the cost of the transcript.